J<small>OHN</small> W<small>EGMAN</small>, Receiver, &c., Appellant, *v.* R<small>UFUS</small> C<small>HILDS</small> and G<small>ILBERT</small> C<small>HILDS</small>, Respondents.

An action is *pending* in a court, though judgment has been recovered therein, as long as such judgment remains unsatisfied.

*Sherman* v. *Felt* (2 Comst. R., 186); *Suydam* v. *Holden* (Seld's Notes, Appeals No. 4, 16), and *Howell* v. *Bowers* (2 Cromp., Mee, and Rosc., 621), referred to and approved.

Accordingly, under the Constitution of 1846, providing that " all suits and proceedings originally commenced and then *pending* in the Court of Common Pleas, on the 1st Monday of July, 1847, shall become vested in the Supreme Court, hereby established" (Art. 14, sec. 5), an execution upon a judgment recovered in the Court of Common Pleas on the 28th September, 1846, is properly issued in the Supreme Court, and supplementary proceedings properly instituted, and a receiver properly appointed in that court.

Where the finding of the referee, or the court has no evidence to support it, an exception thereto raises a question of law, which will be considered in this court.

(Argued June 23d, 1869, and decided September 25th, 1869.)

APPEAL from an order of the General Term of the seventh judicial district, reversing a judgment for the plaintiff, entered upon the report of Addison Gardiner, referee.

The action was brought by the plaintiff, as receiver of Rufus Childs, to set aside a transfer from him to Gilbert C. Childs as fraudulent. On the 28th of September, 1846, one Horatio Davis recovered judgment against the said Childs, in the Court of Common Pleas of Monroe county, for $50.27 and costs. On the 16th of February, 1860, Davis applied to the Supreme Court, for leave to issue execution upon the judgment. Leave was granted, and in pursuance of the order of the Supreme Court, an execution was issued, and returned unsatisfied. Proceedings supplementary to execution were had before the Monroe county judge, and the plaintiff was appointed receiver, all the proceedings being entitled in the Supreme Court. The receiver thereupon brought this action to set aside a conveyance from Rufus Childs, the debtor, to his son Gilbert Childs, as fraudulent and void. The action was referred to Addison Gardiner, who found for the plaintiff. The defendants appealed to the General Term of the Supreme Court, who reversed on the ground that the proceedings under which the plaintiff was appointed receiver, were invalid, the Supreme Court having no jurisdiction of the Davis judgment.

*Theron R. Strong* for the appellant, upon the point discussed by the court, of the jurisdiction of the Supreme Court to issue execution, cited *O'Malley* v. *Reese* (1 Barb., 643); 3 How. Pr., 175; *Howell* v. *Bowers* (2 Cromp., Mees. & Rosc, 621); *Suydam* v. *Holden* (1 Abb. Dig., 679); Seld. Notes, Nos. 4, 16; *Sherman* v. *Felt* (2 Comst., 186); *Dresser* v. *Van Pelt* (15 How. Pr., 19; *Bank of Genesee* v. *Spencer* (id., 412); *Gould* v. *Torrance* (19 id., 560).

*James C. Cochrane*, for the respondents.

MASON, J. The question presented for adjudication in this case is, whether the Supreme Court, under the Constitution of 1846, has jurisdiction to award an execution upon a judg-

ment entered in the Court of Common Pleas before the adoption of the Constitution, where such judgment was rendered in a suit originally commenced in that court. It is provided by the fifth section of article fourteen of the constitution that jurisdiction of all suits and proceedings pending in the Supreme Court and Court of Chancery, and all suits and proceedings originally commenced and pending in the Court of Common Pleas (except in the city and county of New York), on the first Monday of July, 1847, shall become vested in the Supreme Court hereby established. (Constitution article 14, section 5.)

The section then declares that proceedings, pending in the Courts of Common Pleas, and in suits originally commenced in Justices' Courts, shall be transferred to the County Courts provided for in this Constitution, in such manner and form, and under such regulations as shall be provided for by law. The construction, which has generally been given to this latter provision is, that it applies only to suits originally commenced in Justices' Courts, and to particular proceedings, such as petitions for the discharge of imprisoned debtors, applications for the relief of sureties in criminal cases, petitions for the discharge of debtors under the two-third act, and a variety of other statutory proceedings which were never denominated suits.

Be this as it may, it is certainly limited in express language to a proceeding actually commenced and pending, and cannot be construed to extend to and embrace a motion for the award of an execution upon a judgment, which was commenced afterward. (*O'Malley* v. *Reese*, 1 Barb. R., 643, 646.) This fifth section of the constitution transfers all pending suits, originally commenced in the Common Pleas, to the Supreme Court; and the question presented, therefore, is whether, within the intent and meaning, of this constitutional provision, a suit is regarded as pending, where final judgment has been rendered, but execution of the same has not been had. I think the suit must be regarded as pending, whether the same has proceeded to final judgment or not, provided any further judicial action may be required in the suit; and such

is the construction put upon it in the case of *O'Malley* v. *Reese* (1 Barb. R., 643, 647), by the same court which decided the case before us.

The same paragraph of the Constitution transfers jurisdiction of pending suits in the Court of Chancery to the Supreme Court; and it was held in this court, in the case of *Sherman* v. *Felt* (2 Comst. R., 186), that the Supreme Court had jurisdiction to entertain a motion and set aside a final decree in Chancery, and open the case for a hearing upon the merits.

It was also decided in this court, in the case of *Suydam* v. *Holden,* that the Supreme Court has power under the Constitution of 1846, which gives to that court jurisdiction over all suits pending in the Court of Chancery on the first day of July, 1846, to vacate the entry of satisfaction of a final decree of that court, entered on its records prior to 1846, on the return of an execution unsatisfied, and to order a new execution to be issued on the decree. (Seldens Notes of Cases in the Court of Appeals, No. 4, 16.) This case is quite in point, as the language is the same in both cases, " *suits then pending.*" (See Abbott Dig., Vol. 1, page 679.) The same construction was put upon an act of the British parliament transferring pending suits into the Court of Exchequer, upon the abolition of the Court of Great Sessions of Carmarthenshire. The language of that act was, " as to all suits at law depending in said court," and the Court of Exchequer, held in the case of *Howell* v. *Bowers* (2 Cromp., Mees. & Roscoe, 621), that a suit, in which a judgment was obtained in the Court of Great Sessions, but in which there has been no execution issued, is a suit depending in that court, within the meaning of that act, and was transferred to the Court of Exchequer by the act. Lord ABINGER, Ch. B., said: " It is true there has been a judgment, but there has been no entry of satisfaction on the roll. I think, therefore, this is still a suit pending in the Court of Great Sessions." PARK, B., said: " This court can interfere only in cases of depending suits, but all unsatisfied judgments are pending suits within the meaning of the act."

The issuing of an execution upon the judgment is a proceeding in the suit, and so were the supplementary proceedings and the appointment of the receiver (15 How. Pr. R., 19, 412; 19 How. Pr. R., 560); and I have no doubt as to the jurisdiction of the Supreme Court to award an execution upon the judgment; and the proceedings to appoint a receiver were valid. If this power was not vested in the Supreme Court, I do not think any court had authority to award an execution upon the judgment, as the old Court of Common Pleas was abolished, and it certainly was not transferred to the county courts; nor, in my judgment, does the Constitution authorize the legislature to confer jurisdiction upon the County Court in cases like this. If so, then the fifty-fifth section of the judiciary act, which purports to do so, is of no validity. (Laws 1847, page 335, § 55.)

Be this as it may, that act certainly does not purport to interfere with the jurisdiction of the Supreme Court in cases of this kind; and if it did, it is not in the power of the legislature to take away the jurisdiction conferred by the Constitution, for that is the paramount law. If I am right in the views above expressed, it follows that the General Term were wrong in reversing the judgment entered upon the report of the referee on this ground, and they seemed to have placed their reversal solely on this ground. There is nothing in this case to show, that the execution was not in proper form, and the referee finds it was issued out of the proper court.

The referee has found this conveyance in question was fraudulent, in fact; and as this finding is not without some evidence to uphold it, we cannot interfere with the judgment on this ground. The finding of the referee in such cases is conclusive, upon this court, as to the facts found by him save only when he makes a finding without any evidence to uphold it; in which case, we hold, he commits an error in law.

The judgment of the General Term must be reversed, and that entered upon the report of the referee, affirmed.

LOTT, J., read an opinion for affirmance, on the ground that

there was no evidence to support the referee's finding of fraud in the conveyance, but expressed no opinion on the question of the validity of the appointment of the plaintiff as receiver.

All the judges concurring for reversal except LOTT, J.

Order reversed, and judgment absolute for the plaintiff.