## Mitchell & Rammelsburg Furniture Co. *v.* Sampson.

### (*Circuit Court, N. D. Florida.* December 30, 1889.)

1. **Partnership—Actions against—Liability in Solido.**
   In Louisiana, in a suit against a commercial partnership, where citation is issued, directed to and served on the firm, and an order is afterwards made for citation to issue to the individual partners, and an answer is filed by the defendants, a judgment may be rendered *in solido* against the individual partners.
2. **Same—Service of Citation on Agent.**
   Under Code Prac. La. art. 198, which requires citation in suits against a partnership to be served on one of the firm in person, or at their place of business, by delivery to their clerk or agent, service cannot be made upon an agent elsewhere than at the firm's place of business.
3. **Judgment—Revival—Courts—Jurisdiction.**
   Under Const. La. 1879, which abolished the several district courts in the parish of Orleans, created one civil district court for said parish, and provided (article 261) that all causes pending in such district courts should be transferred to said civil district court, the latter court has jurisdiction to revive unsatisfied judgments rendered in said district courts, since a suit is " pending " until the judgment rendered therein has been satisfied.
4. **Same—Citation—Curator ad Hoc.**
   Under Rev. Civil Code La. art. 3547, which authorizes the revival of judgments upon issuance of citation, and provides that if the defendant be absent the court may appoint a curator *ad hoc*, upon whom the citation shall be served, a curator *ad hoc* may, by answer, acknowledge the service of citation for the revival of a judgment.
5. **Same.**
   Under said statute, the revival of a judgment without the issuance of a citation, or the acknowledgment of service by the curator *ad hoc*, is a nullity.

At Law. On demurrer.

Action by the Mitchell & Rammelsburg Furniture Company against Frank G. Sampson. Defendant demurred to the declaration.

*H. Bisbee*, for plaintiff.

*C. P. Cooper*, for defendant.

PARDEE, J. The plaintiff, a citizen of the state of Ohio, sues the defendant, a citizen of Florida, on three several counts, alleging as follows:

"*First.* On a judgment recovered by the said Mitchell & Rammelsburg Furniture Company, on the 1st day of March, 1875, in the sixth district court of the parish of Orleans, state of Louisiana, against the firm of Sampson Bros., composed of Chandler Sampson and Frank G. Sampson, *in solido,* for the sum of seven thousand seven hundred and seventy-eight dollars, ($7,778,) with interest at eight (8) per cent. per annum from the first day of January, 1875, until paid, with costs of suit. Plaintiff avers that on the 28th day of January, 1885, due judicial proceedings were taken to revive the said judgment in the civil district court of the city of New Orleans, state of Louisiana, and such further proceedings were had therein that plaintiffs obtained a judgment reviving the said original judgment; all of which appears by certified transcript of the record of said cause, filed herewith. *Second.* That on the 1st day of March, 1875, the commercial firm of Johnson & Faulkner, then doing business in the state and city of New York, recovered a judgment in the sixth district court for the parish of Orleans, state of Louisiana, against the said firm of Sampson Bros., and Chandler C. Sampson and Frank G. Sampson, *in solido,* for the sum of one thousand and four and ninety-five one-hundredths dollars, ($1,004.95,) with interest at the rate of eight (8) per cent. per annum from the first day of January, 1875, until paid, and costs of suit; and plaintiff alleges that afterwards, on the 21st day of May, 1885, by due proceedings in the civil district court for the parish of Orleans, in the state of Louisiana, a judgment of the said court was duly rendered in said cause, reviving the aforesaid original judgment in favor of said Johnson & Faulkner against the said Sampson Bros., and said Chandler C. Sampson and Frank G. Sampson, *in solido;* and that afterwards, to-wit, on the 28th day of May, 1889, the said judgments were duly assigned to the plaintiff, whereby the plaintiff became the owner of the same; and that at the time of such assignment the individual members of said firm of Johnson & Faulkner were citizens of the state of New York. *Third.* That on the 12th day of November, 1877, the firm of Charles & William Bastian, in the fifth district court for the parish of Orleans, recovered a judgment against Sampson Bros., and Frank G. Sampson and Chandler C. Sampson, *in solido,* for the sum of three thousand five hundred and fifty-one and seventy-two one-hundredths dollars, ($3,551.72,) with eight per cent. interest per annum on three thousand two hundred dollars ($3,200) from January 1, 1877, and five (5) per cent. interest on three hundred and fifty-one and seventy-two one-hundredths dollars, ($351.72) from January 1, 1877, until paid, and costs of suit; that afterwards, on April 27, 1877, by certain judicial proceedings had in the civil district court for the parish of Orleans, a judgment was rendered reviving the said original judgment against the said Sampson Bros., and Chandler C. Sampson and Frank G. Sampson, *in solido,* for the aforesaid sums of money; all of which appears by the certified transcript filed with the declaration. That afterwards, on the 28th day of May, 1889, the said judgment in favor of the said Charles & William Bastian was duly assigned to the plaintiff, at which time the assignors, Charles & William Bastian, were citizens and residents of the state of Louisiana."

To the several counts of the declaration, Frank G. Sampson has filed demurrers as follows: To the first count:

"*First.* The said count is so inconsistent, and contains such variance in statements therein of the sum alleged to have been recovered in the alleged judgment therein sued on, that the same is bad in substance.  *Second.* The said count and alleged record of judgment therein sued on, and made a part thereof, show that there was never any personal service of process on said defendant in the proceedings to revive the alleged judgment therein set forth, and that defendant was, at the time of such proceedings, not a resident of Louisiana, where said proceedings are alleged to have been had, but was a resident of the state of Florida, and did not appear personally or by attorney therein, and the alleged court acquired no jurisdiction of defendant therein, and the suit herein, on said judgment as revived, is not maintainable.  *Third.* That the court wherein original judgment was rendered never acquired jurisdiction of the defendant, or to render judgment."

To the second count, as follows:

"*First.* The like ground as the second ground of demurrer above set forth to said first count.  *Second.* That said alleged proceedings, whereon it is alleged, in said second count, judgment therein sued on was recovered and revived, appear, and the alleged judgment appears, to be by and in the name of Johnson & Faulkner; the same not appearing to be a corporation, and no individual or Christian names of said Johnson & Faulkner appearing in said proceedings, or being stated in plaintiff's said second count of his declaration. *Third.* Like ground, as the third ground of demurrer, as first count."

To the third count, as follows:

"*First.* The said third count, in the body thereof, and the alleged judgment therein sued on and referred, and made a part thereof and filed therewith, so vary in statement of the amount of money alleged to have been adjudged in favor of plaintiff against the said defendant in said alleged judgment that same is bad in substance.  *Second.* Said third count, and the alleged record of judgment therein sued on, and made a part thereof, show that there was never any personal service of process on said defendant, in proceedings in which it is alleged said alleged judgment was recovered, nor did said defendant appear therein in person, or by attorney; and the court never acquired jurisdiction of defendant, to render said judgment against him.  *Third.* The said last-mentioned record of alleged judgment, and alleged revival thereof, does not show that any process, summons, or citation issued to said defendant in the alleged proceeding to revive said last-mentioned judgment.  *Fourth.* Said defendant assigns further like ground of demurrer to said third count as the second and third grounds of demurrer above set forth to the plaintiff's said declaration."

On the hearing of these demurrers the following questions were argued:

"*First.* Whether in Louisiana, in a suit against a commercial partnership, where citation is issued, directed to and served on a firm, a judgment can be rendered *in solido* against the individual members of the firm.  *Second.* Whether, under the law and practice in Louisiana, in a suit against a commercial partnership, service can be made upon an agent, servant, or employe of the partnership otherwise than at the place of business or counting-room of the partnership.  *Third.* Whether, under the constitution and laws of Louisiana, the civil district court of the parish of Orleans, under the constitution of 1879, is the successor of the former district courts of the parish of Orleans, having jurisdiction in civil matters, and whether said civil district court has jurisdiction to revive judgments rendered in said district courts of the parish of Orleans prior to the adoption of the constitution of 1879.  *Fourth.* Whether, under the law of the state of Louisiana relating to the revival of judgments, a curator *ad hoc* can be appointed in case a judgment debtor is an absentee

of the state; and, if so, whether said curator *ad hoc* can waive service of citation by appearing and filing answer."

The decision of these questions settles the judgments to be entered on the said demurrers.

1. "Where the petition alleges the defendants are trading under a firm name, and it appears the transaction was a commercial one, they will be considered as liable *in solido*, and judgment given accordingly, without any express allegation or prayer for a judgment *in solido*." *Chapman* v. *Early*, 12 La. 230. In this case, plaintiff sued the firm of Early & Amelung. The defendant Early only was cited or appeared. Judgment *in solido* against both defendants was rendered in the lower court, and the same was affirmed in the supreme court.

"The evidence shows that the firm sued here is composed of six individuals, one of whom only, to-wit, John Cummings, was served with process of citation. This would have been sufficient, had the firm been a commercial one. Code Prac. art. 198. *McGehee* v. *McCord*, 14 La. 362.

"While a commercial partnership is in existence, service of citation on one of the members of the firm is good against all of them; but after its dissolution every member intended to be sued and made a party must be served with citation separately." *Gaiennie* v. *Akin's Ex'r*, 17 La. 42.

"Persons associated together for carrying personal property for hire, in vessels, are commercial partners, and may be cited in the manner prescribed for the citation of such associations; but it is only where they are associated together under a title, or as a firm, that the service of a citation addressed to the partnership in its social name, made on one of its members only, is sufficient." *Hefferman* v. *Brenham*, 1 La. Ann. 146.

2. "The service of citation of appeal is to be made in the same manner as is required by law in courts of ordinary jurisdiction. So the service on a commercial firm must be made on either of the partners in person, or by leaving a citation at their store or counting-house and delivering it to their clerk or agent." *Huntstock* v. *His Creditors*, 10 La. 488. In this case, service upon a clerk of the firm, not appearing to have been at the store or counting-house, was held bad.

"The Code of Practice, article 198, requires citations in suits against a partnership to be served on one of the firm in person, or at their store and counting-house, by delivery to their clerk or agent. The return here shows the service to have been made at the house of one of the partners, and does not state the citation was delivered to a clerk or agent of the firm. It was therefore contrary to law, and could not be the basis of a judgment, unless the want of it has been waived by some act of the defendants." *Abat* v. *Holmes*, 8 Mart. (N. S.) 145.

"In the case of a mercantile firm, the citation may be left with the clerk, at the counting-house; and we have held that service on the clerk elsewhere is bad. *Huntstock* v. *His Creditors*, 10 La. 488. In this case, the service was made at the proper place, to-wit, the domicile of

the defendant, but not on a proper person, to-wit, one living there." *Kendrick's Heirs* v. *Kendrick,* 19 La. 36.

3. Previous to the constitution of Louisiana of 1879, there were several district courts in the parish of Orleans having general jurisdiction in civil matters. By the constitution of 1879, said courts were superseded, and in lieu thereof one civil district court for the parish of Orleans was created. Article 261 of the constitution provides for the transfer of all causes taken or pending in the supreme court of the state under the constitution of 1868 to the supreme court and courts of appeal created by the constitution of 1879, and then provides as follows:

"All causes that may be pending in all other courts under the constitution of 1868, upon the adoption of this constitution, and the organization of the courts created by this constitution, shall be transferred to the courts, respectively, having jurisdiction thereof under this constitution."

The question here is almost exactly the same question before the supreme court of the state of Louisiana in the case of *Scherrer* v. *Caneza,* 33 La. Ann. 314, arising under the constitution of 1868, where it is argued and held as follows:

"The contention is that the case in which the judgment of 1867 was rendered was not a 'pending' suit, and that, although the record thereof was 'removed,' still the jurisdiction which the court which rendered the judgment could have exercised to revive it, had not the removal taken place, was not transferred to or vested in the court by which it was superseded. This is a mere play upon words,—an attempt to make a distinction without a difference. The object of the framers of the constitution of 1868, when they enacted article 151, was to have the legislature to provide for the bridging over of all proceedings had before the late to the new courts, fully and completely, so as to preserve, in their integrity, all acquired rights, and to avoid all *hiatus* in the administation of justice, by continuing in the recent the anterior judicial organization. The legislature so truly realized that purpose that they passed the required law, taking good care to say that the cases would be proceeded with, in all respects, as if no change had been made. Had not such been the object in view, the consequence would have been that the plaintiff, a judgment creditor, would have had no forum to which to apply for an enforcement, or for a renewal, of his judgment, and that in the course of time her judgment would have been perempted, notwithstanding any effort on her part to keep it alive. Although the rule be that the judgment to revive must be rendered by the court which rendered the judgment sought to be revived, still it lies in the discretion of the legislature to modify it as public convenience may require; but, unless the legislature uses negative language, the jurisdiction to revive continues, necessarily, either in the original court, as long as it exists, or passes to the court superseding it. We have taken the pains, in view of the intrinsic importance of the question, to retrace our steps, and to inquire into previous legislative action on similar subjects, and we have ascertained, to our satisfaction, that in Act 43 of 1845, which was passed in furtherance of article 148 of the constitution of that year, and which is identical with article 151 of the constitution of 1868 and that in Act 229 of 1853, which was passed, for a like purpose, after the adoption of the constitution of 1852. the word 'remove' was employed as a channel of transmission, and that the word 'transfer' was not at all used. The word 'remove' has a technical meaning, fixed by legislation, jurisprudence, and practice, state and federal. It is synonymous with 'transfer;' possibly, more comprehensive. When it

is used under a constitutional requirement that 'causes pending be removed' from one judicial organization to another, and no clear negative terms are employed to the contrary, it must be considered as meaning that the cases decided or not, and, necessarily, the records embodying them, shall be transmitted from one court to another, and that the jurisdiction which the former court possessed over them shall vest in the new court, which shall have the same right and power to proceed with all matters therein involved, actually or prospectively, as effectually as could have been exercised by the court whence it comes, had not the removal occurred. The words, 'removal of causes now pending,' found in article 151, and the like, in the second section of Act 7, apply to all cases, determined or not, in which the demand had not been satisfied, in which something remained to be done, either to obtain, to execute, to annul, to enjoin, to regulate, or to revive a judgment. The object of a suit is not merely to procure a barren judicial recognition of a legal right, but it is to preserve and to enforce that right, whether it has reference to the payment of money, to the ownership or possession of property, or to the enjoyment of some privilege or advantage. It is not possible to conceive of a case, decided on its merits, in which numberless questions may not arise and be determined by judgments either interlocutory, final, or definitive. To say that a suit is ended, that a cause is not pending, when the claim is still alive and unsatisfied, when its purpose has not been accomplished; to consider, when a record is removed from one court to another, that the law intends only to provide for a physical, manual delivery of a bundle of papers from a custodian to another, means to abstain, to refuse conferring jurisdiction for further action touching matters susceptible of arising therein,—would be to do violence to language having a legal import; to write such away from the statute, and wantonly to sacrifice and destroy completely, valuable rights, for the mere gratification of contemplating the unjust and hurtful operation of implausible, incorrect, and deceptive verbal criticism. At all times has this theory been acted upon, *Banking Co.* v. *Pike*, 28 La. Ann. 896; *Watt* v. *Hendry*, 23 La. Ann. 594; *La Chambre* v. *Cole*, 30 La. Ann. 961. A review of the annals of our jurisprudence from 1845 to the present day, unless in a solitary instance, signally proves that the question of jurisdiction and power in the new court has never been even mooted. If the isolated expression of judicial opinion on the subject said to be found in *Chapman* v. *Nelson*, 31 La. Ann. 345, mean differently, then we regret our inability to indorse the views there enunciated, and prefer to determine the question for ourselves, as though it were one entirely novel. In our interpretation of the word 'pending,' a reference to the jurisprudence of sister states touching it fully sustains us. Thus, in New York, we find that it was expressly decided that, although a judgment has been recovered in a suit, the action is still 'pending' as long as such judgment remains unsatisfied. *Wegman* v. *Childs*, 41 N. Y. 159. In Pennsylvania it was held that the word 'pending' applies to a decided case, in which successive *fi. fa.'s* or *venditionis* have been issued, but not fully satisfied. *Ulshafer* v. *Stewart*, 71 Pa. St. 170. Had the interpretation contended for been placed upon the previous legislation, all the cases on the dockets in 1845 and 1852 would have stood as doleful mementoes of the past, and remained as humiliating monuments to the impotency or indolence of the framers of the constitutions of those years, and of the members of succeeding legislative bodies."

4. "All judgments for money, whether rendered within or without the states, shall be prescribed by the lapse of ten years from the rendition of such judgments: provided, however, that any party interested in any judgment may have the same revived, at any time before it is prescribed, by having a citation issued, according to law, to the defendant

or his representative, from the court which rendered the judgment, unless the defendant or his representative show good cause why the judgment should not be revived; and, if such defendant be absent, and not represented, the court may appoint a curator *ad hoc* to represent him in the proceedings, upon which curator *ad hoc* the citation shall be served." Article 3547, Rev. Civil Code La.

"It is now well settled in our jurisprudence that, until regular process is served upon the curator *ad hoc*, he has no capacity to act as such; that he cannot waive any of the legal proceedings required for the protection of the rights of the absentee he is called upon to defend; that his powers must be strictly limited to those conferred by law;   *   *   * and that, as a general and fixed rule, a curator *ad hoc* cannot be permitted to waive any of the legal rights of the party he is charged to represent and defend. *Stockton* v. *Hasluck*, 10 Mart. (La.) 474; *Durnford* v. *Clark's Estate*, 3 La. 203; *Edmonson* v. *Railroad Co.*, 13 La. 284; *Collins* v. *Pease*, 17 La. 117; *Hill* v. *Barlow*, 6 Rob. (La.) 142; *Hyde* v. *Craddick*, 10 Rob. (La.) 387; *Kræutler* v. *Bank*, 12 Rob. (La.) 456. Here, therefore, it is clear that the proceedings had in this suit from the day of the appointment of the curator *ad hoc* are irregular and illegal; that said curator, not having been cited, had no right to appear for the absentees; that he could not waive the production of the legal evidence upon which the plaintiff's claim is based; that he could not consent to the rendering of any judgment against said absentees for the amount claimed, nor any part thereof; and that all said proceedings, and the judgment appealed from, are mere nullities." *Carpenter* v. *Beatty*, 12 Rob. (La.) 540.

"A curator *ad hoc* cannot directly or indirectly waive citation." *Ticknor* v. *Calhoun*, 28 La. Ann. 258.

"A curator *ad hoc*, appointed to represent an absentee, may acknowledge service of citation and petition. Such an acknowledgment is not a waiver of any right of the absentee." *Millaudon* v. *Beazley*, 2 La. Ann. 916. In this case, the defendant being an absentee, a curator *ad hoc* was appointed by the judge, to represent him in defense of the suit. The curator acknowledged service of the petition and citation. The court, citing *Hill* v. *Barlow*, 6 Rob. (La.) 142; *Carpenter* v. *Beatty*, 12 Rob. (La.) 540; *Hyde* v. *Craddick*, 10 Rob. (La.) 387,—says: "With regard to the questions touching the authority of curators *ad hoc* determined in those cases, we express no opinion. None of the cases cited decide the point presented in this suit. The curator, in the present instance, so far as appears from the record, waived none of the rights of the party whom he was appointed to represent. There was no waiver of citation, nor of service of the petition; but the written acknowledgment of the curator is that both were served upon him. The service thus acknowledged   *   *   * brought the defendant into court, and operated an interruption of prescription."

"A curator *ad hoc* can validly acknowledge in writing service of petition and citation addressed to him as such; and such acknowledgment brings the defendant into court, and interrupts prescription." *Bartlett* v. *Wheeler*, 31 La. Ann. 540. The acknowledgment in this case was an

answer filed as curator *ad hoc*, in which the curator acknowledged that he had been duly cited.

(*a*) An inspection of the transcript filed with, and made a part of, the declaration in the instant case shows that the judgment sued on in the first count was rendered in a case in which the petitioner, the Mitchell & Rammelsburg Furniture Company, declared against Sampson Bros., a commercial firm composed of Chandler C. Sampson and Frank G. Sampson, and the individual members thereof, *in solido;* that citation therein was issued, and directed to Sampson Bros.; that, on a supplemental petition filed therein, an order was made for citation to issue to the individual members of the firm of Sampson Bros.; that thereafter was filed an answer in the following terms: "And into this honorable court come defendants, by their undersigned counsel, who, for answer to plaintiffs' demand, deny all and singular the allegations in their petition contained,"—which answer was signed by counsel; that, in the suit to revive the said judgment, citation was issued to Sampson Bros., the sheriff returning thereon that after due and diligent inquiry and search he was unable to find Sampson Bros., defendants; but was credibly informed that they were out of the state of Louisiana, and resided in the state of Florida; that thereupon, on suggesting the citation and return thereof, the court appointed a curator *ad hoc* to represent the absent defendants; and that eight days thereafter the said curator *ad hoc* filed an answer acknowledging the service of petition and citation, and pleading general denial. These proceedings seem to be regular and valid. The demurrer to the first count should be overruled.

(*b*) An inspection of the transcript of the judgment on which the second count is based, shows that, in the original suit, *Johnson & Faulkner* v. *Sampson Bros.*, defendants appeared and filed answer, without any citation issuing; that, in the suit brought thereafter to revive the said judgment, there is no mention whatever made of any citation to the defendants, nor to the curator *ad hoc*, nor any acknowledgment made by the curator *ad hoc* as to the service of petition and citation upon him. The proceedings to revive were null, for want of citation. The demurrer to the second count should be sustained.

(*c*) An inspection of the transcript of the judgment upon which the third count is based shows that the suit was brought by Charles & William Bastian against Sampson Bros., alleged to be a commercial firm doing business in the city of New Orleans, and composed of Chandler C. Sampson and Frank G. Sampson, and the individual members of the said firm, *in solido*. Citation was issued thereon, directed to Sampson Bros., on which the sheriff made the following return:

"Copy of petition and citation to be served on Sampson Bros. received on the 11th day of April, 1877, and, on the 2d day of July, 1877, served a copy of the within citation and accompanying petition on Sampson Bros., through G. A. Fouce, agent, in person."

Thereupon judgment by default was taken, and confirmed; the defendants making no appearance whatever. Afterwards, in the suit to revive the said judgment, it does not appear that any citation was issued

or served upon the defendants, although there is a recital, in the motion and order appointing a curator *ad hoc,* that, "on showing the court that defendants cannot be found, as sheriff's return shows," etc.   Neither does the record show that any citation was issued or served upon the curator *ad hoc,* nor does it appear that the curator *ad hoc* acknowledged the issuance and service of any citation.

These proceedings were invalid from the beginning, for want of citation.   The demurrer to the third count should be sustained.