ESCHER, ANCILLARY ADMINISTRATOR, ET AL. *v.*
WOODS, TREASURER OF THE UNITED STATES,
ET AL.

No. 365. Argued April 17, 1930.—Decided April 28, 1930.

*Mr. Spier Whitaker,* with whom *Messrs. Lawrence A.
Baker, Lyttleton Fox, Henry Escher,* and *Henry Ravenel*
were on the brief, for petitioners.

*Assistant Attorney General Rugg,* with whom *Attorney General Mitchell, Messrs. Claude R. Branch* and *Thomas E. Rhodes* and *Mary G. Connor,* Special Assistants to the Attorney General, and *Mr. J. Frank Staley* were on the brief, for respondents.

Mr. Justice Holmes delivered the opinion of the Court.

This is a suit by citizens of Switzerland to recover property mistakenly seized during the late war as belonging

to an alien enemy. The plaintiffs recovered, but on a statement of account by the Alien Property Custodian he claimed a deduction of $55,909.83 for administrative expenses, " said sum having been paid by [him] into a fund maintained by him, out of which the expenses incurred in administering money and other property seized by the Alien Property Custodian, are paid." On a rule to show cause the claim was disallowed by the Supreme Court of the District of Columbia, but the decision was reversed by the Court of Appeals. 33 F. (2d) 556. A writ of certiorari was granted by this Court.

In the answer to the motion to show cause why the charge should not be stricken out it was not alleged and no evidence was offered to show that the expenses actually incurred in respect of the particular fund were equal to this sum, or what, if any, they were. It was said to be impracticable to prove them or to apportion the general expenses of the office. The amount was two per cent. of the assets handed over and it is said that without pleading or evidence the record shows this to be a reasonable charge.

To sustain the deduction the respondents rely upon the Trading with the Enemy Act of October 6, 1917, c. 106, § 12; 40 Stat. 411, 423, amended by Act of March 28, 1918, c. 28; 40 Stat. 459, 460, by which the Alien Property Custodian is "vested with all the powers of a common-law trustee " in respect of all property, " other than money," received by him under the Act and may exercise any powers appurtenant thereto " as though he were the absolute owner thereof." They also invoke Executive Order, February 26, 1918 (No. 2813) that the Custodian "may pay all reasonable and proper expenses which may be incurred in or about securing possession or control of money or other property . . . and in otherwise protecting and administering the same. So far as may be, all such expenses shall be paid out of, and in any event

recorded as a charge against, the estate to which such money or other property belongs." Also Order of July 16, 1918 (No. 2916), of which it is necessary to mention only the direction that the expenses "shall be limited to and paid or satisfied out of only the property or business or undertaking involved and out of which " the expenses shall have arisen provided that if the property or assets of the business are insufficient, they may be satisfied out of other property "received from, or as the property of, the same enemy." Under these Acts and Orders the Custodian has adopted the course followed in this case and it is further urged that his conduct is tacitly ratified by the later Acts of March 4, 1923, c. 285, adding § 24 to the original Act, which embodies so much of the above orders as limits the liability to expenses incurred in respect of the same property, and to the property concerned or other property of the same person, 42 Stat. 1511, 1516; and May 16, 1928, c. 580; 45 Stat. 573, 574, that "all expenses of the office . . . including compensation of the Alien Property Custodian . . . shall be paid from interest and collections on trust funds and other properties under the control of such Custodian." It will be observed that the charge for the expenses of the office is upon interest and collections only; that is, a deduction from income for the cost of earning it, not as in the present case, a charge upon the corpus of the fund.

We do not perceive even in 1928 anything that clearly suggests treating the property in the hands of the Custodian as one great trust, to be called on to bear the expenses of administration, as one homogeneous whole. On the contrary the directions are explicit that the expenses charged to a given property are those incurred in getting or protecting it, or at least others similarly due from the same owner. But, and this is the main thing, all of these provisions naturally are interpreted to refer to property that the Custodian is entitled to hold. It

would be extraordinary if the charges incident to a seizure that the law did not intend the Custodian to make and a possession that the law requires him to surrender, were to be imposed upon the owner whose interests were sacrificed up to the moment of restitution. It seems to be going far enough to require him to bear the loss that he has suffered, without compelling him to pay the Government for its outlay in doing him harm. See *Hobbs* v. *McLean*, 117 U. S. 567, 582.

*Decree reversed.*