## BECKER STEEL CO. OF AMERICA v. HICKS, Alien Property Custodian, et al.
### No. 269.
Circuit Court of Appeals, Second Circuit.
July 17, 1933.

Townsend & Kindleberger, of New York City (E. Crosby Kindleberger, of New York City, of counsel), for appellant.

George Z. Medalie, U. S. Atty., of New York City, Roy St. Lewis, Asst. Atty. Gen., Philip M. Marcum, of New York City, Sp. Atty. in alien property matters, and Thomas E. Rhodes, Sp. Asst. to Atty. Gen., for appellees.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The bill of complaint in this suit, filed in 1922, charged that the Alien Property Custodian had improperly seized 2,500 shares of treasury stock of the Becker Steel Company of America and sold it for $20,000. A decree was entered on August 21, 1925, adjudging that the shares were at the time of the seizure treasury stock belonging to the complainant Becker Steel Company of America and not subject to seizure and sale as the property of an alien, and decreeing that the defendants Frederick C. Hicks, as Alien Property Custodian, and Frank White, as Treasurer of the United States, pay to the complainant the sum of $20,000, being the amount of the proceeds of the sale of the stock. No appeal was taken from this decree. In October, 1925, the Treasurer of the United States paid to the Becker Steel Company $16,112.16, and the complainant, through its solicitors, gave a satisfaction of the decree and the complainant executed a release to Frank White as Treasurer of the United States and Frederick C. Hicks as Alien Prop-

erty Custodian, as well as other public officials, which recited that, although the gross proceeds of the sale of the shares of stock was $20,000, that amount had been reduced by $3,887.84 through the necessary expense incurred in connection with the sale, leaving the net proceeds returnable to the complainant at $16,112.16.

Prior to the time of the receipt by Becker Steel Company of the check for $16,112.-16, its solicitors were informed that, unless the receipt and release as prepared were executed by it and the warrant for the satisfaction of the decree was executed by its solicitors, the check for $16,112.16 would not be paid over. The Alien Property Custodian did not have in his custody or control the sum of $20,000 when decreed to be paid by him, for expenses had been already paid out aggregating $3,887.84 in the trust. An account was rendered by the Alien Property Custodian's office in September, 1931, showing that the expenses in connection with the appraisal, advertising and sale of the stock were the following:

Emery, Booth, Janny & Varney..... $210.15
American Appraisal Co. ........... 375.00
Haskins & Sells Audit ............. 60.00
Frank Presbrey Co., Advertising ... 311.99
Frank Presbrey Co., Printing ...... 624.33
R. H. Weller..................... 500.00
J. L. Lang ...................... 968.75
W. E. Chilton, Leg. Ser. .......... 500.00
E. N. Jones, Expenses ............. 87.62
C. F. Dichey ..................... 50.00
Dist. Nat'l Bk. Wash. Dep. Fee .... 200.00

$3,887.84

None of the foregoing expenses was incurred or paid at the request of Becker Steel Company.

Frederick C. Hicks, who had been appointed to the office of Alien Property Custodian on April 10, 1925, died on December 14, 1925, and Howard Sutherland was appointed Alien Property Custodian on December 24, 1925. Frank White resigned and ceased to hold the office of Treasurer of the United States on April 30, 1928. He was succeeded in that office by H. T. Tate, who resigned in January, 1929, and on January 18, 1929, Walter O. Woods was appointed. More than six months elapsed between the appointment of Howard Sutherland and Walter O. Woods to their respective offices of Alien Property Custodian and Treasurer of the United States and February 8, 1932, when Becker Steel Company moved in this suit to

substitute Howard Sutherland as Alien Property Custodian in the place of Frederick C. Hicks and Walter O. Woods as Treasurer of the United States in the place of Frank White and to require the Alien Property Custodian to pay to the Becker Steel Company the sum of $3,887.64, with interest thereon from February 20, 1919.

At the time of the signing of the receipt and satisfaction, the Supreme Court had not rendered the decision in Henkels v. Miller, 271 U. S. 298, 46 S. Ct. 524, 70 L. Ed. 953, 51 A. L. R. 229, whereby interest was allowed upon property of American citizens seized by the Alien Property Custodian under the Trading with the Enemy Act. After this decision, interest on the $16,112.16, amounting to $3,093.50, was paid to Becker Steel Company. On April 28, 1930, in Escher v. Woods, 281 U. S. 379, 50 S. Ct. 337, 74 L. Ed. 918, the Supreme Court held that the Alien Property Custodian was not entitled to deduct from property mistakenly seized administration expenses not shown to have been incurred in respect to that particular property. Thereafter the motion was made in this suit to substitute Howard Sutherland as Alien Property Custodian in the place of Frederick C. Hicks, and Walter O. Woods as Treasurer of the United States in place of Frank White, and to recover the $3,887.64 of expenses withheld, with interest. Judge Goddard denied the motion on the ground that the time to bring in Howard Sutherland and Walter O. Woods had expired and because without such substitution no relief could be granted. From that decree this appeal is taken.

The survival of actions, suits, or proceedings is governed by the Act of Congress of February 13, 1925 (28 U. S. C. § 780 [28 USCA § 780]) which provides that:

"Where, during the pendency of an action, suit, or other proceeding brought by or against an officer of the United States, * * * and relating to the present or future discharge of his official duties, such officer dies, resigns, or otherwise ceases to hold such office, it shall be competent for the court wherein the action, suit, or proceeding is pending, whether the court be one of first instance or an appellate tribunal, to permit the cause to be continued and maintained by or against the successor in office of such officer, if within six months after his death or separation from the office it be satisfactorily shown to the court that there is a substantial need for so continuing and maintaining the

cause and obtaining an adjudication of the questions involved."

Paragraph 4 of Rule 19 of the Supreme Court of the United States (28 USCA § 354) likewise deals with the survival of actions against officials, and provides that:

"Where a public officer, by or against whom a suit is brought, dies or ceases to hold the office while the suit is pending in a federal court, either of first instance or appellate, the matter of abatement and substitution is covered by section 11 of the Act of February 13, 1925 (§ 780 of this title). Under that section a substitution of the successor in office may be effected only where a satisfactory showing is made within six months after the death or separation from office."

It seems unnecessary to discuss all the various objections leveled at Judge Goddard's decree. It is enough that neither Howard Sutherland, the Alien Property Custodian, nor Walter O. Woods, the Treasurer of the United States, was made a party to this suit, and that the time within which either might be joined had expired prior to the making of the motion to bring them in. Obviously, whatever the merits of the controversy, no effective relief could be granted without their presence.

The correctness of the decree by the court below depends on whether the suit was "pending" when the motion for substitution was made. If it was, the motion came too late, because it was not made "within six months after * * * (the) * * * separation from office" of the prior incumbents —the time limit which the statute prescribes if the suit is not to abate.

It is to be noticed that no cause of action is asserted against the officials, sought to be substituted, on any theory that they have funds in their possession belonging to the Becker Steel Company which they are wrongfully withholding. The proceeds of the stock sold by the former Alien Property Custodian to the extent of $16,112.16 was turned over to Becker Steel Company, and the remaining $3,887.84 was paid by the former Treasurer of the United States to third parties who performed services in connection with the sale by the Alien Property Custodian. Under such circumstances, recovery from any succeeding official would not be based upon his personal acts, but upon a responsibility imposed upon him in his official capacity for the acts of a predecessor.

Prior to 1899, an action against an officer of the United States as such abated on the ending of his term. Gorham Mfg. Co. v. Wendell, 261 U. S. 1, 43 S. Ct. 313, 67 L. Ed. 505; Irwin v. Wright, 258 U. S. 219, 42 S. Ct. 293, 66 L. Ed. 573; Le Crone v. McAdoo, 253 U. S. 217, 40 S. Ct. 510, 64 L. Ed. 869; Pullman Co. v. Croom, 231 U. S. 571, 34 S. Ct. 182, 58 L. Ed. 375; Murphy v. Utter, 186 U. S. 95, 22 S. Ct. 776, 46 L. Ed. 1070; United States ex rel. Bernardin v. Butterworth, 169 U. S. 600, 18 S. Ct. 441, 42 L. Ed. 873; Warner Valley Stock Co. v. Smith, 165 U. S. 28, 17 S. Ct. 225, 41 L. Ed. 621; The Secretary v. McGarrahan, 9 Wall. 298, 19 L. Ed. 579. To avoid the inconvenience and injustice often inherent in such a situation, Congress passed the Act of February 8, 1899 (chapter 121, 30 Stat. 822 [28 USCA § 780 note]), which was the forerunner of the Act of February 13, 1925 (chapter 229, § 11, 43 Stat. 941, 28 U. S. C. § 780 [28 USCA § 780]), governing the present case. Under each of these statutes a showing of the need of the continuance of a suit pending against a public official was required in order to revive or maintain it against his successor in office, and an application to continue it had to be made to the court within a specified time. The time (six months) had already elapsed in the case at bar when the motion was made before Judge Goddard.

Ample authority exists for holding that, though a final judgment has been entered, the cause is still pending until the judgment is satisfied. This is the general rule in New York and in many of the other states of the Union.

In New York, the Constitution of 1846 (article 14, § 5) provided that jurisdiction of all suits and proceedings pending in the Courts of Common Pleas should become vested in the Supreme Court. In Wegman v. Childs, 41 N. Y. 159, an action had been commenced in the Court of Common Pleas and had proceeded to judgment therein. After the Constitution of 1846 went into effect, proceedings supplementary to execution were instituted in the Supreme Court, and a receiver in sequestration was appointed in that court who brought a suit to set aside a conveyance by the judgment debtor as a fraud upon the plaintiff. It was contended that the Supreme Court had no jurisdiction over the judgment and hence no control over the ancillary suit. But the New York Court of Appeals sustained the jurisdiction of the Supreme Court, and said that "the suit must be regarded as pending, whether the same has proceeded to final judgment or not, provided any further

judicial action may be required in the suit." It also remarked that in Suydam v. Holden, (Selden's Notes of Cases in the Court of Appeals, No. 4, 16) it had already held that the Supreme Court had power under the Constitution of 1846 to vacate the entry of satisfaction of a final decree of the former Court of Chancery entered on its record prior to 1846, on the return of an execution unsatisfied and to order a new execution to be entered on the decree. In reaching its conclusion, the Court of Appeals followed the English decision of Howell v. Bowers, 2 C. M. & R. 621. There a judgment had been obtained in the Court of Great Sessions, but, before any execution had issued, an act of the British Parliament was passed transferring "all suits at law depending" in that court to the Court of Exchequer. The suit was transferred and Baron Parke, speaking for the Court of Exchequer, said: "This court can interfere only in cases of depending suits, but all unsatisfied judgments are pending suits within the meaning of the act."

In Mitchell & Rammelsburg Furniture Co. v. Sampson (C. C.) 40 F. 805, Judge Pardee, in construing the meaning of the word "pending" under a Louisiana statute providing for the transfer of causes from courts which had been superseded, held that it embraced proceedings to enforce a judgment rendered prior to a transfer. Various other courts have given the word the same interpretation. Ulshafer v. Stewart, 71 Pa. 170; Chapin v. James, 11 R. I. 86, 23 Am. Rep. 412; Scherrer v. Caneza, 33 La. Ann. 314; Mann v. Blount, 65 N. C. 99; O'Maley v. Reese, 1 Barb. (N. Y.) 643; Gates v. Newman, 18 Ind. App. 392, 46 N. E. 654; Ex parte Howland, 3 Okl. Cr. 142, 104 P. 927, Ann. Cas. 1912A, 840; Sweetser v. Fox, 43 Utah, 40, 134 P. 599, 47 L. R. A. (N. S.) 145, Ann. Cas. 1916C, 620.

The appellant cites various decisions, such as Midkiff v. Colton (C. C. A.) 242 F. 373, in which actions that had gone to final judgment were not treated for certain purposes as "pending," but we cannot see that the situation in any of them at all resembled the present. Since the passage of the acts of Congress allowing suits against public officials to be revived against their successors, it would seem quite unreasonable on the face of things that a judgment should be unenforceable because an official has parted with his office. To carry forward "pending" proceedings and yet to except the very step that renders them efficacious ignores realities. But for the statute (28 U. S. C. § 780 [28 USCA § 780]), the suit could not be revived at all. It is quite illogical for the complainant to seek a revivor and at the same time to neglect to take action within the time which the act of Congress prescribes.

The complainant has little grievance on the merits. Instead of litigating its rights, it settled with the Alien Property Custodian and waited for years before making its motion, hoping that the decision of the Supreme Court in Escher v. Woods, 281 U. S. 379, 50 S. Ct. 337, 74 L. Ed. 918, might apply to this case.

We hold that this suit was "pending" until the judgment was satisfied, that under such circumstances it could only be maintained against the present officials if revived pursuant to statute, and that the time to effect a revivor had elapsed when the motion before Judge Goddard was made. His decree is accordingly affirmed.