**KUTTROFF et al. v. SUTHERLAND, Alien Property Custodian, et al.**

No. 282.

Circuit Court of Appeals, Second Circuit.
July 17, 1933.

Cardozo & Nathan, of New York City (Michael H. Cardozo, Jr., of New York City, of counsel), for appellants.

George Z. Medalie, U. S. Atty., of New York City (Roy St. Lewis, Asst. Atty. Gen., Thomas E. Rhodes, Sp. Asst. to Atty. Gen., and Philip M. Marcum, of New York City, Sp. Atty. in alien property matters, of counsel), for appellees.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The complainants, American citizens, brought suit against the Alien Property Custodian and the Treasurer of the United States, pursuant to provisions of section 9 of the Trading with the Enemy Act (50 USCA Appendix § 9), to recover $440,500 (par value) of bonds of the Second, Third, and Fourth United States Liberty Loans and interest. These bonds were seized on March 19, 1919, as enemy owned property by Francis P. Garvan, the then Alien Property Custodian. They were in fact not enemy owned, but belonged to the complainants. Judge Bondy, who tried the case in the District Court, directed the return of the bonds and interest, but allowed the retention of $1,059.81, which had been deducted as so-called administrative expenses for collecting the income derived from the bonds. It is the retention of this sum to which the complainants object, and the only relief which they seek on this appeal is recovery of $1,059.81 and interest. We think that the decree should be affirmed.

Frank White was Treasurer of the United States when this suit was brought and the decree was made, but since the latter date, and on April 30, 1928, Frank White resigned, and his successor in office has never been substituted. The suit as against the Treasurer has therefore abated. Becker Steel Co. v. Hicks et al., 66 F.(2d) 497, handed down by this court herewith.

The question remains whether the complainants have shown a right to recover from Howard Sutherland against whom the decree in this suit was granted. Judge Bondy, while directing the return of the bonds and certain interest accruing thereon, declined to order repayment of the sum of $1,059.81, retained for expenses. Urey Woodson has, by a timely motion, been substituted for Sutherland, and is the only public official now before the court. Is he liable to refund $1,059.81, if it was improperly retained by his predecessor in office or by the Treasurer of the United States?

The only judicial remedy afforded for recovery of property seized by the Custodian by virtue of the Trading with the Enemy Act is under section 9 (a) of the act (50 USCA Appendix § 9 (a). That section provides for a suit against the Custodian, or the Treasurer of the United States "as the case may be" for the restoration of "money or other property * * * held by the * * * Custodian or by the Treasurer. * * *" The remedy is in the alternative, and depends for its efficacy on reaching the official whose coffers have been enriched by property which was seized as enemy owned, when it was not so owned.

It may be said that the items aggregating $1,059.81, if properly deducted from the proceeds of the coupons, as compensation for services in collecting the coupons, must have become a part of the Custodian's funds. But section 12 of the Trading with the Enemy Act (50 USCA Appendix, § 12) requires that: "All moneys * * * received by the alien property custodian * * * shall be deposited forthwith in the Treasury of the United States, and may be invested and reinvested by the Secretary of the Treasury in United States bonds or United States certificates of indebtedness, under such rules and regulations as the President shall prescribe for such deposit, investment, and sale of securities." By executive order of February 26, 1918, the President directed that all moneys received by the Alien Property Custodian should be forthwith deposited in the Treasury of the United States. In the absence of any proof to the contrary, it is to be presumed that this deposit was made. Not only has no proof to the contrary been furnished, but the complainants' attorney filed an affidavit stating: "That the funds which yielded the earnings and income were in the custody of the Treasury Department and were not held by the Custodian; that the earnings and income on said funds were collected by the Treasury Department and not by the Custodian; and that the Custodian had nothing to do with such earnings and income except to forward the same to the complainants when and as received from the Treasury Department." Record, folios 95, 98.

It may be argued that the affidavit of Sutherland filed upon the motion herein tends to show that the income from the bonds to the extent that it was required to pay the expenses of the Custodian's office was paid by the Treasurer to him. That affidavit speaks of $1,059.81 as representing "expenses deducted by the Alien Property Custodian from income and earnings upon property returned to the plaintiffs pursuant to the final decree. * * *" Record, fol. 64. But it does not appear in what way it was deducted and whether the deduction consisted of anything more than a·credit to the Custodian on the books of the Treasurer. Only that method of deduction would be consistent with the statement in the affidavit of complainants' attorney that the Custodian "had nothing to do with such earnings and income except to forward the same to the complainants when and as received from the Treasury Department."

But it is contended that, irrespective of any possession of moneys by the Custodian, he can control the disbursement of the sum retained by the Treasurer to meet expenses and ,accordingly can be directed to make an order on the Treasurer for payment to the complainants if the charges were improperly made.

This ,argument is based on section 23 of the Trading with the Enemy Act (50 USCA Appendix § 23) which reads as follows:

"The Alien Property Custodian is directed to pay to the person entitled thereto, from and after March 4, 1923, the net income (including dividends, interest, annuities, and other earnings), accruing and collected thereafter, in respect of any money or property held in trust for such person by the Alien Property Custodian or by the Treasurer of the United States for the account of the Alien Property Custodian, under such rules and regulations as the President may prescribe."

By executive order, the President delegated to the Custodian "all power and authority conferred upon the President" under section 23.

Section 9 (a) of the Trading with the Enemy Act authorized the President to order the payment of claims without suit. Section 23 merely enabled the Custodian under presidential regulations to do the same thing as the President could do without him under section 9 (a). The remedy thus afforded is administrative, and is an alternative to the further judicial remedy given by section 9 (a) and invoked by the complainants in the case at bar. Section 9 (f) of the act (50

USCA Appendix § 9 (f), says that: "Except as herein provided, the money or other property conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian, shall not be * * * subject to any order or decree of any court." There is no provision in the entire act enabling the court in a suit like the present to *require* the Custodian to exercise his administrative discretion to deliver property to the owner. Under the judicial remedy provided, the Custodian may only be required to deliver property, if it is found to be in his possession and restitution is ordered by the court. United States ex rel. Goldschmidt v. Sutherland, 60 App. D. C. 279, 51·F.(2d) 607.

The decree is affirmed without passing upon the question whether the deductions made were lawful, but because the only relief which could be granted in this suit would be against the Treasurer of the United States, if he had properly been made a party, and he is not before the court.