## WOODSON v. DEUTSCHE GOLD UND SILBER SCHEIDEANSTALT VORMALS ROESSLER.
### No. 5963.

Court of Appeals of the District of Columbia.
Argued Oct. 2, 1933.
Decided Nov. 20, 1933.

Thomas E. Rhodes and H. B. Cox, Sp. Assts. to Atty. Gen., for appellants.

Richard H. Wilmer and Douglas L. Hatch, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

VAN ORSDEL, Associate Justice.

This is a special appeal from a decree in the Supreme Court of the District of Columbia denying the motion of appellants, defendants below, to dismiss plaintiff's amended bill of complaint.

By the motion to dismiss, defendants admit the material allegations of the amended bill, in which it is alleged, among other things, that the plaintiff, Deutsche Gold und Silber Scheideanstalt Vormals Roessler, filed its bill in equity against the Alien Property Custodian and the Treasurer of the United States in the Supreme Court of the District of Columbia under the provisions of section 9 of the Trading with the Enemy Act, as amended (50 USCA Appendix § 9), to recover money alleged by the plaintiff to have been retained by the custodian to pay administrative expenses contrary to section 24 (a) of the Trading with the Enemy Act, as amended, 42 Stat. 1516 (50 USCA Appendix § 24 (a). Plaintiff also sought to recover all money alleged to have been wrongfully retained from the property of Holzcerkohlungs Industrie Aktiengesellschaft, hereinafter referred to as Hiag, to all of whose interests the plaintiff alleges that it succeeded as a result of the merger of the former with the latter in 1930.

It appears that plaintiff and Hiag were, at the time of the war with Germany, corporations with their places of business located at Frankfurt a/Main and Konstanz, Germany, respectively. Both companies were engaged in the manufacture of chemicals, dyes, etc. They owned stock in certain American corporations, which were engaged in similar business. This stock was seized by the Alien Property Custodian under the provisions of the Trading with the Enemy Act.

In connection with the administration of this property by the custodian, it is alleged that he paid out by way of fees, commissions, costs, attorney fees, etc., in administering plaintiff's property, the sum of $40,251.74, and in the administration of the Hiag property, $13,608.12, a total of $53,859.86. For the amount of these expenditures the plaintiff is not seeking to recover in this suit. These expenses, it is alleged, were paid by

the custodian out of the specific trusts of the two claimants in the amounts actually incurred and were not charged against the general administration costs of the custodian's office.

Under the amendment of the Trading with the Enemy Act of March 4, 1923, 42 Stat. 1511, known as the Winslow Act (see 50 USCA Appendix §§ 9, 20), plaintiff and Hiag each received $10,000 in principal amount, and thereafter income in the amount of $10,000 per annum, after a deduction, it is alleged, of 1 per cent. administration expenses, except as to the last release of income, where an administration fee of 2 per cent. was deducted.

With the enactment of the Settlement of War Claims Act of 1928, 45 Stat. 254 (see 50 USCA Appendix § 9), under which the Alien Property Custodian was authorized to release to German claimants all of their property except 20 per cent. of the principal thereof, Hiag and plaintiff filed their claims and were subsequently paid 80 per cent. of the principal amounts of their property and all accrued income, less 2 per cent. administration fees, and a sufficient amount to meet any liability for income taxes. It is alleged that the custodian withheld from plaintiff $39,599, and from Hiag $20,747.52, or a total of $60,346.52, and that the custodian also deducted from treasury interest earned after March 4, 1923, by plaintiff's invested cash, $5,841.70, and from Hiag's invested cash balance $2,300.61, a total of $8,142.31. It is for these amounts, totaling in the aggregate $69,888.83, for which this suit was brought and for which recovery is sought.

The present action challenges the authority of the Alien Property Custodian to deduct from the principal sum a flat percentage as a charge for the expenses incurred in administering the trust, plaintiff's contention being that only the actual expense of administering each trust should be deducted from the property involved therein. This question was before this court in the case of Tate v. Escher, 59 App. D. C. 81, 33 F.(2d) 556. In that case we reviewed fully the statutes and rules promulgated by the President to the Alien Property Custodian, affecting and governing the matter of expenses, and held that the deduction of a flat rate by the custodian was authorized by law, and therefore a proper method of administering alien property funds in his possession. Our decision in that case was reversed by the Supreme Court in Escher v. Woods, 281 U. S. 379, 50 S. Ct. 337, 338, 74 L. Ed. 918. The plaintiff there was not an alien enemy, and the court held that no charge for administering property, mistakenly seized, could be charged by the custodian. But discussing the law applicable to the deduction of expenses from enemy seized property, the court said: "To sustain the deduction the respondents rely upon the Trading with the Enemy Act of October 6, 1917, c. 106, § 12, 40 Stat. 411, 423, amended by Act of March 28, 1918, c. 28, 40 Stat. 459, 460 (50 USCA Appendix § 12), by which the Alien Property Custodian is 'vested with all of the powers of a common-law trustee' in respect of all property, 'other than money,' received by him under the Act and may exercise any powers appurtenant thereto 'as though he were the absolute owner thereof.' They also invoke Executive Order, February 26, 1918 (No. 2813) that the Custodian 'may pay all reasonable and proper expenses which may be incurred in or about securing possession or control of money or other property * * * and in otherwise protecting and administering the same. So far as may be, all such expenses shall be paid out of, and in any event recorded as a charge against, the estate to which such money or other property belongs.' Also Order of July 16, 1918 (No. 2916), of which it is necessary to mention only the direction that the expenses 'shall be limited to and paid or satisfied out of only the property or business or undertaking involved and out of which' the expenses shall have arisen provided that if the property or assets of the business are insufficient, they may be satisfied out of other property 'received from, or as the property of, the same enemy.' Under these Acts and Orders the Custodian has adopted the course followed in this case and it is further urged that his conduct is tacitly ratified by the later Acts of March 4, 1923, c. 285, adding § 24 to the original Act, which embodies so much of the above orders as limits the liability to expenses incurred in respect of the same property, and to the property concerned or other property of the same person, 42 Stat. 1511, 1516 (50 USCA Appendix § 24); and May 16, 1928, c. 580, 45 Stat. 573, 574, that 'all expenses of the office * * * including compensation of the Alien Property Custodian * * * shall be paid from interest and collections on trust funds and other properties under the control of such Custodian.' It will be observed that the charge for the expenses of the office is upon interest and collections only; that is, a deduction from income for the cost of earning it, not as in the present case, a charge upon the corpus of the fund.

"We do not perceive even in 1928 anything that clearly suggests treating the property in the hands of the Custodian as one great trust, to be called on to bear the expenses of administration, as one homogeneous whole. On the contrary the directions are .explicit that the expenses charged to a given property are those incurred in getting or protecting it, or at least others similarly due from the same owner."

Whatever may have been the practice of the Alien Property Custodian in making flat-rate deductions for administrative expenses applicable alike to all enemy claims, irrespective of the simplicity or complexity of the administration of their property, the action of the custodian in treating all enemy property as a single trust, to bear the expense of administration as one homogeneous whole, is clearly contrary to the holding of the Supreme Court in the above case.

The decree is affirmed.