Scherrer vs. Caneza, Sheriff, et al.

No. 8203.

CHRISTOPHER SCHERRER VS. ANDREW CANEZA, SHERIFF, ET AL. THIRD·
OPPOSITION OF HENRY S. BROWNE.

The Fifth District Court for the Parish of Orleans, created under the Constitution of 1868;.
    had jurisdiction to revive a judgment rendered in the year 1867 by the Fifth District
    Court for the Parish of Orleans, created under the Constitution of 1864.
A suit is still *pending* in a court as long as the judgment is not satisfied or prescribed.
The proceeding to revive a judgment is not a new suit, but part of the original action.
Whether the writ of *fieri facias* issues under the original judgment or that of revival, is im-·
    material; in either case it is legal.
The contract upon which the Third Opponent bases his claim, is a nondescript and has no·
    legal effect; it is neither a sale, nor a pledge, nor a *dation en paiement*, and it cannot affect·
    third persons.

APPEAL from the Twenty-Third Judicial District Court, parish of
Iberville.   *Cole, J.*

*Barrow & Pope* for Plaintiff and for the Third Opponent, Appellants.-

*Chas. O. Lauve* and *T. Gilmore & Sons* for Defendants and Appellees.-

The opinion of the Court was delivered by

BERMUDEZ, C. J.   This is an injunction suit, the object of which is·
to have a certain judgment declared a nullity, and certain property·
levied upon released from seizure.

The Fifth District Court of New Orleans, created in 1864, rendered
judgment on the 9th of May, 1867, in favor of Widow Lambert against
one Scherrer.

That court was abolished by the Constitution of 1868, and was·
superseded by another court having a similar title.

On the 26th of April, 1877, *before* the expiration of the ten years
following the rendition of that judgment, the plaintiff instituted before
the last court proceedings to revive it.   Judgment was accordingly
rendered.

In 1879, the plaintiff issued a *fieri facias* addressed to the sheriff of
Iberia parish, defendant's domicil, which was levied upon property
found in his possession, and claimed to belong to him.

The defendant thereupon charging prescription against the judg-
ment of 1867, and nullity against the proceedings in revival, obtained
an injunction to arrest the sheriff in the execution of the writ.

One Browne, as third opponent, intervened, joining the defendant,
and claiming title to the property seized, first as *owner*, and next,.
eventually, as *pledgee*.

There was judgment rejecting both demands and dissolving the in-·
junction.   From the judgment thus rendered the plaintiff in injunction
and the third opponent have appealed.

1st. They claim that the reviving judgment of 1877 was rendered by a court without jurisdiction *ratione materiæ;* that the writ illegally issued· under it; that even if the court were competent, the writ could only issue under the original judgment of 1867; but that this could not. be done, because the latter judgment not having been legally revived, was extinguished by prescription before the writ issued.

While we doubt very much whether the defendant could ask us in this proceeding to pass upon the question of jurisdiction thus presented,. we incline to believe that the third opponent can do so, as he charges. that the seizure is illegal, both because it is founded on no valid judgment, and because it was effected on property to which he lays claim of *ownership* or *possession.*

We consider that the Fifth District Court created by the Constitution of 1868, superseding, as it did, the Fifth District Court created in 1864, had jurisdiction to entertain the proceedings to revive the judgment of 1867, for the reason that it derived that authority from Acts. Nos. 7 and 46 of 1868, the object of which was to *transfer* all causes " *then pending* " before the courts of the parish of Orleans, under the Constitution of 1864, to the courts created by the Constitution of 1868..

Those acts were passed in furtherance of article 151 of the Constitution of 1868, which directed the General Assembly to provide for the *removal* of causes then *pending* in the courts of the State to courts created by or under that Constitution.

The *first* section of Act 7 directs that the records, dockets, books and papers, in any of the former District Courts, shall be *removed* to· the new courts; those in the previous Fifth District Court of the parish of Orleans, to the Fifth District Court of the parish of Orleans. created by the Constitution of 1868; and the *second* section of the same act further provides that the courts to which any suits now *pending·* may be *transferred,* under this act, shall entertain and exercise jurisdiction over the same, and the cases so transferred shall be proceeded with in the new courts in all respects *as if no change had been made.*

Act No. 46 repeats and confirms Act No. 7, containing further provisions relative to succession proceedings, which were no doubt its object..

The contention is, that the case in which the judgment of 1867 was. rendered, was not a " *pending* " suit, and that although the record thereof was " *removed,*" still the jurisdiction which the court which rendered the judgment could have exercised to revive it, had not the· removal taken place, was not *transferred* to or vested in the court by· which it was superseded.

This is a mere play upon words, an attempt to make a distinction; without a difference.

The object of the framers of the Constitution of 1868, when they

enacted article 151, was to have .the Legislature to provide for the bridging over of all proceedings had before the late to the new courts, fully and completely, so as to preserve, in their integrity, all acquired rights, and to avoid all *hiatus* in the administration of justice, by con- tinuing in the recent the anterior judicial organization. The Legislature so truly realized that purpose, that they passed the required law, taking good care to say that the cases would be proceeded with in all respects, *as if no change had been made.* Had not such been the object in view, the consequence would have been that the plaintiff, a judgment creditor, would have had no *forum* to which to apply for an enforcement or for a renewal of his judgment, and that in the course of time, her judgment would have perempted, notwithstanding any effort on her part to keep it alive. Although the rule be that the judgment to revive must be rendered by the court which rendered the judgment sought to be re- vived, still it lies in the discretion of the Legislature to modify it, as public convenience may require; but unless the Legislature uses negative language, the jurisdiction to revive continues necessarily either in the original court as long as it exists, or passes to the court superseding it.

We have taken the pain, in view of the intrinsic importance of the question, to retrace our steps, and to inquire' into previous legislative action on similar subjects, and we have ascertained to our satisfaction that, in Act 43 of 1845, which was passed in furtherance of article 148 of the Constitution of that year, and which is identical with article 151 of the Constitution of 1868, and that in Act 229 of 1853, which was passed for a like purpose, after the adoption of the Constitution of 1852, the word *"remove"* was employed as a channel of transmission, and that the word *" transfer "* was not at all used.

The word *" remove "* has a technical meaning, fixed by legislation, jurisprudence and practice, State and Federal. It is synonymous with *" transfer,"* possibly more comprehensive. When it is used, under a constitutional requirement, that "causes *pending* be *removed"* from one judicial organization to another, and no clear negative terms are em- ployed to the contrary, it must be considered as meaning that the cases, *decided* or *not,* and necessarily the records embodying them, shall be transmitted from one court to another, and that the jurisdiction which the former court possessed over them, shall vest in the new court, which shall have the same right and power to proceed with all matters therein involved, actually or prospectively, as effectually as could have been exercised by the court whence it comes, had not the removal occurred.

The words, *" removal* of causes now *pending,"* found in article 151, and the like, in the second section of Act 7, apply to all cases, *deter-*

*mined* or *not*, in which the demand had not been satisfied, in which something remained to be done, either to obtain, to execute, to annul, to enjoin, to regulate or to revive a judgment.

The object of a suit is not merely to procure a barren judicial recognition of a legal right, but it is to preserve and to enforce that right, whether it has reference to the payment of money, to the ownership or possession of property, or to the enjoyment of some privilege or advantage. It is not possible to conceive of a case *decided on its merits*, in which numberless questions may not arise and be determined by judgments either interlocutory, final or definitive.

To say that a suit is ended, that a cause is not pending, when the claim is still alive and unsatisfied, when its purpose has not been accomplished, to consider when a record is removed from one court to another, that the law intends only to provide for a physical, manual delivery of a bundle of papers from a custodian to another, means to abstain, to refuse conferring jurisdiction for further action, touching matters susceptible of arising therein, would be to do violence to language having a legal import, to write such away from the statute, and wantonly to sacrifice and destroy completely valuable rights, for the mere gratification of contemplating the unjust and hurtful operation of implausible, incorrect and deceptive verbal criticism.

At all times has this theory been acted upon. 28 An. 896; 23 An. 594; 30 An. 961. A review of the annals of our jurisprudence from 1845 to the present day, unless in a solitary instance, signally proves that the question of jurisdiction and power in the new court has never been even mooted. If the isolated expression of judicial opinion, on the subject, said to be found in 31 An. 345, mean differently, then we regret our inability to endorse the views there enunciated, and prefer to determine the question for ourselves, as though it were one entirely novel.

In our interpretation of the word "*pending*," a reference to the jurisprudence of sister States touching it, fully sustains us.

Thus, in New York, we find that it was expressly decided that, although a judgment has been recovered in a suit, the action is still "*pending*" as long as such judgment remains unsatisfied. Wegman vs. Childs, 41 N. Y. 159.

In Pennsylvania, it was held that the word "*pending*" applies to a *decided* case, in which successive *fi. fa's.* or *venditionis* have been issued, but not fully satisfied. Ulshafer vs. Stewart, 71 Pa. St. 170.

. Had the interpretation contended for been placed upon the previous legislation, all the cases on the dockets, in 1845 and 1852, would have stood as doleful *mementos* of the past, and remained as humiliating monuments to the impotency or indolence of the framers of the con-

stitutions of those years and of the members of succeeding legislative bodies.

2d. Considering that the Fifth District Court created, by the Constitution of 1868 was vested with jurisdiction, and could legally revive the judgment rendered by the previous court in 1867; and that it has rendered a valid judgment to that end, the question next presented is, whether the writ enjoined could have issued under the reviving judgment, as it did.

· In passing upon this objection, we must take for granted that the admission in the record and the writ state nothing but what is perfectly true.

They show that the writ issued to satisfy a judgment rendered against Scherrer in said Fifth District Court for the parish of Orleans, *on the 23d day of May, 1877*, in favor of the plaintiff, widow Lambert.

The *corpus* of the judgment of that date is not before us, but we are authorized to infer, under the circumstances, that the judgment of 1877 not only revived in terms that of 1867, but repeated and incorporated it, as is sometimes done, by decreeing that " *accordingly the plaintiff* recover from the defendant the sum of $———, etc." The clerk would not probably have ventured to identify the writ with that judgment as authority for it, unless the judgment had so provided.

Besides, were it not so, the objection is too technical to be sustained. The judgment reviving, and the judgment revived, must be considered and treated as one and the same, as blended together for an identical and common object. We regard a proceeding to revive a judgment not as a new suit, but simply as a proceeding in the same suit to continue and keep alive a judgment therein rendered, and to furnish proof that it has not been satisfied or extinguished. 31 An. 325. So that it is immaterial whether the writ issued under the former or the latter judgment.

What is it to the defendant, who owes a debt liquidated by judgment, whether the writ issued and be executed against him, under either, as long as no attempt is made to draw more money from him than the first judgment calls for?

3d. The next question presented relates to the title of the opponent to the property levied upon.

He has failed to establish, to the satisfaction of the District Judge and to our own, that he has legally acquired, so as to bind third persons, either a right of ownership, even contingent, or one of pledge to that property.

The act upon which he relies, in the alternative, is not susceptible of accurate description. It is too voluminous for transcription. Were it exposed to light, it would be as impossible to any one to say what it

is, as it has been to counsel on either side, in this case, to give it any significant name, capable of conveying knowledge of its essence and nature. It is easier to say what it is not.

It is not an act of sale, it is not a *dation en paiement*, it is not a pact with the privilege of redemption, it is not a pledge, it is not a power of attorney.

It purports to be a transfer for no fixed price of all the rights of the defendant to a lease, to the contents of a valuable cooperage shop, to claims due, to effects to be acquired, to transactions to be done, to all his actual, eventual, prospective property and rights. Theoretically, it was intended to be a shield to the parties thereto in any contingency; practically, it is nothing, particularly as regards third persons.

Its clear object seems to have been to keep and maintain Scherrer in the undisturbed, indefinite possession and enjoyment of his effects, credits and business, under cover of the third opponent, whether he be a *bona fide* creditor or not.

As it does not refer to immovables, possession in the transferree or pledgee was indispensable to bind third persons. R. C. C. 2478, 3162. The requirement of possession is an inexorable rule of law in such cases which cannot be relaxed, and which was wisely provided as an effectual preventive of fraud and deception.

It is true, that the thing pledged may be in the temporary possession of the pledgor, as a special bailie, under circumstances rendering it indispensable, but where, as in this case, the things said to have been pledged have never been out of the pledgor's possession and dominion, and have always remained subject to his disposal, by way of sale, collection, exchange, renewal, or other modes of alienation or incumbrance, no pledge or privilege can be successfully asserted in this State as against third persons. Troplong Nant., Nos. 311, 312, 313; Dalloz Rep., v. 32, p. 455; Duranton, v. 18, Nos. 525, 528, 531; 6 An. 476; 26 An. 35; 21 Wall. 360; 96 U. S., p. 476.

The circumstance that there was a sign hanging outside of the shop, on which figured the name of *C. Scherrer*, coupled with the word *"agent,"* adds no greater force to opponent's claims as owner or pledgee, than does the registry of the nondescript act in the conveyance book of the office of the Parish Recorder, which is barren of any binding effect on third persons.

Besides, it is not only probable, but morally certain, that the effects contained in the shop in 1874, when the agreement was formed, were not, in their identity, those upon which the sheriff has levied in 1879.

The view which we have taken of this case, on the question of absence of all possession, actual or constructive in the opponent, either as transferree or as pledgee, and of the consequent beneficial effect to

third persons, who remain unaffected by private agreements, relative to the disposition of movables, not ostensibly followed by unmistakable acts of delivery and possession, which are the only equivalents to notice, dispenses us from passing upon the issues of fraud and simulation raised by the judgment creditor in his answer to the petition for an injunction, and to the third opposition.

We find no error in the decree of the lower court, which applies the law.

.The judgment appealed from is affirmed with costs.