# IN RE MARK CROSS COMPANY.

---

TRADEMARKS; APPEALS; AMENDMENTS; PENDING APPLICATIONS.

1. Were a party whose application for a trademark under the trademark act of Congress of March 3, 1881, was rejected, sought, more than two years afterwards, to amend his application under sections 14 and 24 of the act of Congress of February 20, 1905, so as to bring it under the provisions of the new law, but the Commissioner, on appeal from the Examiner of Trademarks, while in form dismissing the appeal on the ground that relief should be sought by petition, and not by appeal, nevertheless took jurisdiction, and held that the application was not pending within the meaning of the act of 1905, it was *he'l*, on an appeal from his decision to this court, that he had virtually refused registration, and that his decision was appealable.

2. In the absence of any clear intent on the part of the legislature to give a special meaning to a word contained in a statute, the ordinary meaning should be given to it.

3. An application for registration of a trademark filed under the trademark act of Congress of March 3, 1881, and which stood at the date when the new trademark act of February 20, 1905, went into effect, rejected by the Commissioner of Patents upon an appeal duly taken to him,—the decision of the Commissioner having been made more

than two years before,—is not a "pending" application within the meaning of that section of the latter act providing that, under certain circumstances "pending," applications might be proceeded with under its provisions.

No. 303.  Patent Appeals.  Submitted May 31, 1905.  Decided June 13, 1905.

HEARING on an appeal from a decision of the Commissioner of Patents rejecting an application for registration of a trademark.                                                    *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. A. P. Greeley* for the appellant.

*Mr. John M. Coit* for the Commissioner of Patents.

Mr. Justice DUELL delivered the opinion of the Court:

This appeal discloses the following state of facts:  On January 21, 1902, the appellant, the Mark Cross Company, filed in the Patent Office an application for registration of an alleged trademark.  In the usual course of procedure, the Examiner of Trademarks refused registration, and his decision, on appeal to the Commissioner of Patents, was affirmed January 2, 1903. The act of March 3, 1881, was then in force, and so remained until repealed by the act of February 20, 1905, which took effect April 1, 1905.  Between January 2, 1903, and April 1, 1905, no further attempt to prosecute the application was made by the applicant.  On April 20, 1905, he filed a proposed amendment by which he sought to further prosecute the application in accordance with the provisions of sections 14 and 24 of the act of 1905.  The Examiner refused to admit the amendment, basing his refusal upon the ground that the applicant had no right to amend as its application was not a pending application as the term is used in said sections 14 and 24 of the act of 1905. Later on, and in reply to a written argument filed on behalf of the applicant, in which it was insisted that the application

was a pending one, and asking for a reconsideration, the Examiner made the argument a part of the record in the application, and again held that the application was not pending within the meaning of the act of 1905. Thereupon an appeal was taken to the Commissioner of Patents in person, who, while holding that relief should be sought by petition, and that no appeal would properly lie, proceeded, nevertheless, to consider the matter, saying: "Notwithstanding the irregularity in the appeal, the question whether the Examiner was right in refusing to permit the amendment to bring the case under the new law will be considered."

After a full review of the merits, he concluded that the application was not pending within the meaning of the sections of the act referred to. While in form he dismisses the appeal, he in fact took jurisdiction and in reality decided the question of the right of applicant to amend. His decision is a virtual rejection of the application, based upon the ground that it was not an application pending at the date when the act of 1905 went into effect. 116 Off. Gaz. 1733. Applicant thereupon took his appeal under section 9 of the act of February 20, 1905 [33 Stat. at L. 727, chap. 592, U. S. Comp. Stat. Supp. 1905, p. 672], which provides "that, if an applicant for registration of a trademark * * * is dissatisfied with the decision of the Commissioner of Patents, he may appeal to the court of appeals of the District of Columbia" on complying with certain conditions.

At the outset it is insisted upon the part of the Patent Office that the appeal should be dismissed for lack of jurisdiction in this court, for the reason that there has been no decision in the Patent Office from which an appeal can be taken. This contention is predicated upon the statement that the Commissioner of Patents has not acted, but has refused to act, and consequently applicant's remedy is not by appeal, but by mandamus proceedings.

We consider this objection as technical in the extreme. The amendment sought to be incorporated was not an ordinary amendment filed in answer to some action of the Examiner of

Trademarks, made in the due prosecution of the case. It was a prerequisite to the prosecution of the application under and in accordance with the terms of the act of 1905, and, stripped of technicalities, the action of the Examiner was in effect a rejection of the application upon the ground that it was not an application filed under the act of 1881 such as could be further prosecuted. The sole and only question to be determined when the amendment was presented was whether the application was pending in the Patent Office on April 1, 1905. The Commissioner of Patents admits this when he says: "The claimed right of amendment depends upon the question whether this case was pending on April 1, 1905, when the new law went into effect."

It would be an unnecessary hardship to the appellant, and to all applicants similarly situated, for this court to dismiss the appeal upon the ground that appellant's remedy was by mandamus rather than by appeal, and thereby also delay a final decision of a question which not only this appellant, but the Patent Office, should desire to have settled at the earliest possible date. It was mainly because we understood that such was the wish of both parties to this controversy that we consented to hear the case now rather than have it come up for hearing next November, which would have been the regular time for its consideration.

It is unnecessary to decide whether mandamus proceedings might have been instituted by this appellant. We think that the treatment in the Patent Office of the question whether appellant's application was pending in the Patent Office on April 1, 1905, has been such that we have jurisdiction of the appeal, and, in the interest of a speedy determination of the question involved, we should not seek to evade it. We do not think that Congress intended to abridge the right of applicants for registry of trademarks filed under the act of 1881, to have the question whether an application so filed was pending at the time when the act of 1905 went into effect, determined by a refusal to accept an amendment seeking to bring the application under the provisions of the latter act, and compel a resort to mandamus proceedings. Such an amendment, while essential, relates to

form, and should be received. If the Commissioner decides that the application, though amended in form, is not one referred to in sections 14 and 24 of the act of 1905, he may refuse registration, and from such refusal an appeal lies to this court. Surely the question whether an application filed under the act of 1881 and remaining in the Patent Office is a "pending application" is as important as many other questions under the act of 1905, made appealable to this court. It is not to be presumed that Congress intended that the decision of the Commissioner of Patents on that question should be final.

The question we are therefore called upon to decide is whether an application for registration of a trademark filed under the act of 1881, and which stood at the date when the act of 1905 went into effect, rejected by the Commissioner upon appeal duly taken to him, is a pending application as that term is employed in sections 14 and 24 of the act of February 20, 1905.

The material part of section 14 is: "That the following shall be the rates for trademark fees: On filing each original application for registration of a trademark, $10: *Provided,* That an application for registration of a trademark pending at the date of the passage of this act, and on which certificate of registration shall not have issued at such date, may, at the option of the applicant, be proceeded with and registered under the provisions of this act without the payment of further fee."

Section 24 reads: "That all applications for registration pending in the office of the Commissioner of Patents at the time of the passage of this act may be amended with a view to bringing them, and the certificate issued upon such applications, under its provisions, and the prosecution of such applications may be proceeded with under the provisions of this act."

The use of the qualifying word "pending" indicates that Congress did not intend that all applications for registration of trademarks, which had not been allowed at the time when the act went into effect, could be further prosecuted under the provisions of that act. Then some meaning must be given the qualifying word. In the absence of any clear intent of Congress to give it a special meaning, the ordinary meaning should

be given it.    There is no necessity for placing any strained
construction upon it.    It is not necessary to do so to preserve
any rights of applicants, which otherwise would be irrevocably
lost.    If an application for registration filed under the act of
1881 is held not to come within that term, the only hardship to
the applicant is that a new application must be filed and a sec-
ond fee paid.    This, of course, would be a hardship where an
applicant had not exhausted all of the rights of amendment and
appeal given by the act of 1881, and the rules promulgated
by the Commissioner of Patents regulating the procedure.    But
surely an applicant who has had his day in court; who has used
every effort and means the law gave him to convince the Exami-
ner of Trademarks of his right to register his alleged trademark;
and, failing there, has taken his appeal to the Commissioner, re-
sulting in a judgment against him,—has had all he could reason-
ably ask for the fee paid by him.    Under the act of 1881 an ap-
plicant for registration of a trademark paid a fee of $25 on filing
his application.    No fee was required for an appeal to the Com-
missioner in person.    Under the act of 1905 the applicant pays
a fee of $10 upon filing his application, and, if an appeal is
taken by him to the Commissioner, he pays an additional fee of
$15.    Surely Congress could have no fiscal reason for permitting
an applicant who has had a complete opportunity to assert his
right to a registration and has availed himself of it, to traverse
the same ground without fee.    We do not think that the qualify-
ing word "pending," as employed in sections 14 and 24, is
synonymous with the word "remaining."    If such meaning is
not given it, what applications can be excluded and considered
as not pending, unless they be such as stood finally rejected,
after appeal to the Commissioner of Patents, at the date of the
repeal of the act under which they were filed?    No ordinary
definition can be given to the term "pending applications" as
broad as above stated, and there is nothing to indicate that Con-
gress intended to open the door for the further prosecution of
all applications finally rejected during the twenty-four years
the act of 1881 was in force.

It is insisted by appellant that its application had not been

finally rejected, and was therefore pending because no request for a rehearing had been asked for, or had, after the application was rejected on appeal to the Commissioner. We find no provision, either in the statute of 1881, or in the rules promulgated for carrying out its provisions, providing for a rehearing. Undoubtedly appellant had at some time a right to ask for a rehearing, and in some instances such applications were doubtless entertained and rehearings granted in the Patent Office under that act. There being no provision for rehearings set out in the statute or rules, there, of course, was no provision stating within what time they could be made. Nevertheless, we think in the absence of any rule such an application should have been made within a reasonable time. In the present case more than two years elapsed without such application being made, and meanwhile the act under which the application was filed was repealed. No application for a rehearing could be made under the act of 1881 after it was repealed, and no provision is made by the act of 1905 for a rehearing of an application filed under the act of 1881. Amendments of pending applications filed under the act of 1881 are only provided for under the act of 1905. No amendment of appellant's application could have been received by the Examiner of Trademarks, had the act of 1881 not been repealed, in the condition it was after the application was rejected by the Commissioner. The only possible proceeding was a petition for a rehearing. Had appellant asked for a rehearing, and had that request been pending or granted at the time when the act of 1905 went into effect, this appeal would have been presented in a different light. In *Larkin* v. *Saffarans,* 15 Fed. 147, a suit was held to be a pending one because no judgment had been entered; the court saying: "If the defendants had made a motion to dismiss, and this case had been, by judgment, dismissed before Congress had passed the new act, or if the court had refused to dismiss for want of jurisdiction and rendered a judgment against the defendants which was void for want of jurisdiction, the case would have been different; and this distinction will be found running through the cases and is reasonable, because then the matter is ended by

judgment, there is no pending suit on which to act, as it is past and gone from the court."

Neither the preservation of rights, otherwise to be lost, requires, nor anything in the proceedings of Congress, or of any of the committees of Congress having charge of the measure, which has been called to our attention, indicates, that any unusual or strained meaning should be given to the qualifying word "pending" as used in the sections of the act referred to. We do not think that Congress, by any provision of the act of 1905, intended to give such an unnatural and forced meaning to the word "pending" as would be necessary in order to consider an application as pending, and therefore subject to amendment, when such application could not have been amended under the act of 1881, and rules applicable thereto, under which it was filed. The ordinary meaning of the word "pending" as used in proceedings analogous to the one under review, is, we think, well defined in the Century Dictionary. This definition is: "When used of an action *pending* properly indicates the period before final judgment. Sometimes it is more loosely used to include the time which may elapse before such judgment is satisfied."

It is the natural and proper definition to apply to the word as used in the act of 1905. Such meaning given to it protects to the full extent all those who had applications, undecided, remaining in the Patent Office, filed under the act of 1881. It saves the rights of all who have not exhausted or forfeited all of their rights, all those against whom no final judgment had been given.

We have examined the cases cited by appellant, and we find that, when the statutes referred to in the decisions are considered, the cases are clearly distinguished from the one at bar.

In *United States* v. *Taylor,* 44 Fed. 2, it was held that a case in which a perpetual injunction had been issued was a pending case. Properly so, for there the judgment of the court was of such a character that the court might at any time be called upon to enforce its judgment by punishing anyone found guilty of violating the injunction. And further, it may be

said the proceeding for the registration of a trademark is a very different proceeding from suits over which courts for many purposes may, even after judgment, retain a limited jurisdiction for special purposes. With the rendition of a judgment in a trademark application case, the Patent Office has concluded its work. If the trademark is registered, it rests with the courts to punish any violation of it. While the Patent Office may declare an interference between it and a pending application for registration, it cannot recall the trademark; it cannot even compel the holder of it to pay the slightest attention to the interference proceeding. *Hicks* v. *Hicks,* 79 Wis. 465, 48 N. W. 495, is not in point, for the court in that action, under the law applicable to it, had the reserved right to revise and alter its judgment. While the Patent Office may have in some cases revised and altered its judgments in trademark registration cases, no express authority for such a step is found in the act of 1881. In *Darrow* v. *Darrow,* 159 Mass. 262, 21 L. R. A. 100, 34 N. E. 270, the case had only been dismissed or dropped from the docket to relieve it. The other cases cited are readily distinguished, and not in point. Much reliance, however, is placed upon *Scherrer* v. *Caneza,* 33 La. Ann. 314, but that case only serves to illustrate the marked difference between an ordinary action in the courts and the proceeding for the registration of a trademark under the act of 1881. The purpose and function of that act ceased when registration was granted and the trademark issued, or when the registration was finally refused by the Commissioner. As well said by counsel for the Commissioner of Patents: "The law provided simply for registration or refusal, and nothing more. When either of those things was done there was nothing remaining to be done under the provisions of the statute."

In suits there often remains, as we have pointed out, something to be done even after entry of judgment. The case last referred to clearly shows this in holding that a suit is pending when something remains to be done "either to obtain, to execute, to annul, to enjoin, to regulate, or to revive a judgment."

When the differences between the two proceedings are borne in

mind, it logically follows that the case in no wise sustains appellant's contention.

Our conclusion is that the decision of the Commissioner of Patents was, in effect, a rejection of the application,—a refusal to grant the registration because it was not a "pending application" as that term is used in sections 14 and 24 of the act of February 20, 1905. We are of the opinion that this ruling was correct, and we therefore affirm it.

This decision will be certified to the Commissioner of Patents as required by law. *Affirmed.*